***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant-employer was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant-employer at its facility in Plymouth, North Carolina, from 16 October 1967 to the present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant-employer, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven month period, as is required by N.C. Gen. Stat. § 97-57.
5. Defendant-employer has stipulated that plaintiff does suffer from an occupational disease, asbestosis; further that he was diagnosed with asbestosis on 9 December 1997, by Dr. Dennis Darcey. Defendant-employer further agrees that a Member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the Industrial Commission.
6. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant-employer agreed that should the claim be found compensable, defendant-employer agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the Commission may by order remove plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
9. The parties further agreed that should the Commission determine N.C. Gen. Stat. § 97-60 through § 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The parties submitted for consideration by the Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Fred M. Dula
c. Dr. James Johnson
d. Dr. Phillip Lucas
e. Dr. Edwin Newman
f. Dr. Robert A. Rostand
g. Dr. Allen Hayes
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant-employer and has been employed with defendant-employer from 16 October 1967 until the present.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant-employer, Weyerhaeuser Company.
3. Defendant-employer manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant-employer's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's. Defendant-employer has approximately 1500 employees in their facility in Plymouth, North Carolina.
4. There are two different types of boilers used at the facility in Plymouth, North Carolina. The first is a recovery boiler which is used to cook the wood pulp. The second type is the steam producing boilers which are used for energy and heat. There are a total of 5 paper making machines within the facility. In addition, there are hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used to dry the wet pulp/paper. The boxes in which the insulation was stored would be labeled as asbestos and today much of the asbestos insulation is labeled with stickers. Defendant did not assign error to this finding of fact made by the Deputy Commissioner and now adopted by the Full Commission.
5. Plaintiff has held several different positions in his 33 years of employment with defendant-employer. Throughout his employment, plaintiff has been exposed to asbestos in various places throughout the plant.
6. Plaintiff was not provided with a respirator to protect against his exposure from asbestos. He has suffered from progressive shortness of breath in the last four or five years and he has difficulty climbing stairs.
7. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1967 until the present.
8. Defendant admits that plaintiff does suffer from asbestosis, an occupational injury. This diagnosis has been confirmed by medical documentation from Dennis Darcey, M.D., Fred M. Dula, M.D., Phillip H. Lucas, M.D., Allen Hayes, M.D., James Johnson, M.D., Edwin Newman, M.D., and Robert A. Rostand, M.D.
9. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on 9 December 1997. Dr. Darcey took an occupational history from plaintiff who stated he joined Weyerhaeuser Pulp and Paper Company in Plymouth, North Carolina in 1967. He has worked there for the past 30 years and is currently employed there. Plaintiff stated his primary job was equipment mechanic and that he worked on tow motors, bulldozers and trucks in a repair garage with 20 other employees. The mill has over 400 pieces of equipment that were maintained by plaintiff and co-workers. Plaintiff believes he was exposed to asbestos dust when changing brake shoes. He stated that it was typical practice for the mechanics to clean the brake shoe housing with an air hose. Since the brakes were composed of asbestos, he believes he had some asbestos exposure from the dust created during brake repair. In addition, plaintiff stated that he has never smoked.
10. It was the opinion of Dr. Darcey that plaintiff has a clinical diagnosis of asbestos related pleural disease and asbestosis. His conclusion was based on the history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read showing pleural changes consistent with asbestos exposure and interstitial changes consistent with asbestosis, and a high resolution CT scan of the chest showing diffuse bilateral pleural thickening consistent with asbestos exposure and mild interstitial changes bilaterally consistent with very mild early asbestosis.
11. Dr. Darcey also reports that plaintiff is at increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, as opposed to those non-exposed individuals. He recommends periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He is also to avoid any further exposure to asbestos dust.
12. Plaintiff's CT scan and chest x-ray dated 9 October 1997, was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was Dr. Dula's opinion that there is some pleural thickening, mainly diffuse type, right slightly more than left. In addition, there are interstitial changes noted bilaterally, including short, thickened, interlobar lines extending to the pleural surfaces in the non dependent portions of the lung bases. It was the overall impression of Dr. Dula that there were interstitial and mild bilateral pleural changes consistent with mild asbestosis in the appropriate clinical situation.
13. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated the same chest film, that there were bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period.
14. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the 9 October 1997 chest film and indicated that there were parenchymal abnormalities consistent with pneumoconiosis present. In addition, he notes that the high-resolution CT shows isolated pleural plaques and mild diffuse parenchymal changes.
15. Dr. James Johnson of Piedmont Radiology in Salisbury, a B-reader, reviewed the 9 October 1997 chest x-ray and concluded there were parenchymal abnormalities present consistent with a pneumoconiosis.
16. Dr. Edwin Newman, a B-reader from Charlotte Radiology, reviewed the same chest x-ray and concluded there were mild parenchymal changes present which can be seen in pneumoconiosis or related to nonspecific interstitial fibrosis.
17. On 23 January 1999, plaintiff was examined by Dr. Robert A. Rostand, a Member of the North Carolina Occupational Disease Panel. Plaintiff advised Dr. Rostand that he is a lifetime nonsmoker. He also stated that he has been employed by Weyerhaeuser Company from 1967 to the present time. His primary job is equipment mechanic and he has worked on tow motors, bulldozers and trucks in a repair garage with other mechanics. He believes he was exposed to asbestos dust when changing brake shoes, brake linings and clutch pads. He stated that it was quite usual for the mechanics to clean the brake shoe housings with air hoses and, since the brakes were composed of asbestos containing materials, he believes that he had some asbestos exposure from the dust created by the air hoses. He also stated that he was not provided with respiratory protection when working on the brake shoes and brake shoe housing.
18. Dr. Rostand examined plaintiff, his chest x-rays, radiological reports and medical records which were provided by the Industrial Commission. He also performed a pulmonary function test on plaintiff. It is Dr. Rostand's overall impression that plaintiff suffers from asbestos related disease of the lung and pleura. It is also his opinion that the proximate cause of these changes was his occupational exposure to asbestos containing materials. He reports that plaintiff has an occupational exposure to asbestos in the workplace without benefit of respiratory protection. He further reports that plaintiff's occupational exposure to asbestos has predisposed him to the changes noted on chest x-ray and high resolution CT scan to a greater extent than a member of the general public not so exposed. In addition, plaintiff is at increased risk for developing lung cancer and mesothelioma as a result of his asbestos exposure compared to nonexposed individuals. Dr. Rostand also reports that plaintiff will require continued medical surveillance to monitor the possible progression of his asbestos related pulmonary disease. He recommends periodic pulmonary function testing, chest x-ray and high resolution CT scan of chest. He also notes that plaintiff should not have further exposure to asbestos containing dust.
19. Plaintiff suffers from asbestosis and asbestos related pleural disease as a result of his many years of asbestos exposure while employed by defendant-employer. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
20. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $588.00 during the year 2000, in which former Deputy Commissioner Hedrick ordered plaintiff's removal from asbestos exposing employment.
21. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
22. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v.Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $588.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of August, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER