***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Garner. with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. The defendant was a duly qualified self insured.
3. An employee-employer relationship existed between the parties at all relevant times. The plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 20, 1945 to December 31, 1989.
4. The plaintiff was last injuriously exposed to asbestos during the plaintiff's employment with defendant, and specifically, the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Subsequent to the initial hearing before the Deputy Commissioner, the defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on May 29, 1998, by Dr. Darcey. The defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence for consideration by the undersigned.
6. It is stipulated that defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of Defendant-Employer's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility with hundreds of miles of steam pipes covered with friable asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The plaintiff worked for defendant for forty-three years until he retired in 1989. His first position with the defendant involved "punching holes" in boilers and working in maintenance. "Punching holes" involved cleaning the boilers by removing crust on the air intake of the boilers to improve their ventilation. The boilers were lined with asbestos. After three years, plaintiff was transferred to operating the boilers. His responsibilities included firing up the boilers and repairing them when they broke down. In order to repair the boilers, plaintiff had to tear the asbestos insulation off the boilers and the pipe, which released a significant amount of asbestos dust into the air. It was his responsibility to blow the dust and soot off of the boilers. Plaintiff would sometimes take naps in the asbestos-contaminated areas and would actually sleep in the asbestos insulation itself. Defendant never provided any type of respiratory protection to plaintiff for his protection against asbestos during the twenty years he worked on the boilers. After leaving the boiler room, plaintiff worked in the evaporator area where he was involved in tearing down the asbestos linings. Just prior to his retirement, plaintiff worked as an assistant to the boiler operator, placing him in areas where asbestos insulation lined the pipes and boilers.
8. Plaintiffs income for the fifty-two (52) weeks prior to his retirement in 1989 was $50,944.20.
9. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Statute §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
10. The parties submitted for consideration by the Industrial Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Albert Curseen
c. Dr. James Johnson
d. Dr. Fred Dula
e. Dr. Richard C. Bernstein
f. Dr. Saadat Khan
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1945 to 1989 while working for defendant.
2. The following medical records confirming the diagnosis of asbestosis were submitted to the Industrial Commission by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University. dated May 29, 1998.
 B. It was the opinion of Dr. Darcey that plaintiff has a history of exposure to asbestos with enough latency to develop asbestosis.
 C. A CT scan and chest x-ray report dated January 23, 1998, interpreted by Dr. James C. Johnson of Piedmont Radiology in Salisbury, a radiologist and B-reader. Overall, it was his opinion there are interstitial and pleural changes that would be consistent with asbestosis in the appropriate clinical situation.
 D. Dr. Richard Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed a chest x-ray dated October 26, 1999. He reported parenchymal abnormalities consistent with pneumoconiosis in the mid- and lower-lung zones with a profusion of 1/1.
 E. A medical evaluation report written by Dr. Saadat Khan, who evaluated plaintiff at the request of the North Carolina Industrial Commission on July 28, 1999.
 F. After a full physical evaluation, pulmonary function testing, and review of medical records including chest x-ray and CT reports, it was the opinion of Dr. Khan that plaintiff has significant asbestos exposure with asbestosis.
3. The plaintiff does suffer from asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment in both lungs is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
4. A CT scan of plaintiff was taken on January 23, 1998 and was read by board certified radiologist, NIOSH certified B-Reader and North Carolina Dusty Trades Reader. Dr. Frederick M. Dula. The CT scan showed bilateral diffuse-type pleural thickening. There are interstitial changes in both lungs including short, thickened interlobar lines extending to the pleural surfaces. There is also a ground-glass appearance to the lung parenchyma, which can indicate an active fibrotic process. There is a fairly large granulomatous lesion in the right lung base anteriorly. No lung masses or pleural effusions are seen to suggest malignancy. Neither adenopathy nor coronary artery calcification were seen. It was Dr. Dula's impression that there are interstitial and pleural changes, which would be consistent with asbestosis in the appropriate clinical situation.
5. From Dr. Darcey's medical examination of May 29, 1998, the Full Commission has determined: Plaintiff has shortness of breath with exercise or heavy physical activity which began approximately 10 years ago and has been gradually worsening. This does limit his activities. He has no history of Tuberculosis, serious pneumonia, hypersensitivity pneumonitis, thromboembolic disease or known coronary artery disease. He has mild allergies but no asthma.
6. Plaintiffs asbestos exposure while working for defendant has caused him to have permanent injury to each lung, each lung being a separate important internal organ. The asbestos-caused permanent injury to each lung is in the form of permanent and irreversible loss of lung function. It can be reasonably presumed that plaintiff has suffered diminution of his future earning power by reason of such loss.
7. Plaintiffs income for the fifty-two (52) weeks prior to his retirement in 1989 was $50,944.20, which is sufficient to produce the maximum weekly compensation rate for 1989, $376.00. Plaintiff has not returned to work in any capacity for defendant or any other employer.
8. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
CONCLUSIONS OF LAW
1. Prior to his retirement, plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. 111Grinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company, 101 N.C.
App. 564,400 S.E.2d 735 (1991).
3. It has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344, 553 S.E.2d 680
(2001).
4. Having contracted asbestosis, plaintiff would be entitled to recover weekly compensation at the rate of $376.00, the rate at the time of plaintiffs retirement, for each week that he is unable to earn wages by reason of his occupational disease. However, there is no showing that plaintiff has been unable to earn wages by reason of his occupational disease.
5. Plaintiff is entitled to compensation in the amount of $20,000.00 for the permanent injury to each lung, due to his occupational disease of asbestosis. N.C. Gen. Stat. § 97-31(24).
6. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiffs asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiffs period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
8. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
9. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000). the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to attorney's fees hereafter provided, defendants shall pay to plaintiff $20,000.00 for the permanent injury of an important organ, his right lung, and $20,000.00 for the permanent injury of his left lung, both injuries caused by asbestosis and asbestos-related pleural disease. Compensation due that has accrued shall be paid in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendant shall pay an additional sum of 5% of the compensation awarded in paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, February 29, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraph 1 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond that awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 10th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN DENIAL OF SECTION 97-61.5(B) BENEFITS:
 S/_______________ DIANNE C. SELLERS COMMISSIONER