***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Berger, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Simon Roebuck was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from February 16, 1942, until August 31, 1985.
3. Defendant was self insured.
4. Simon Roebuck was last injuriously exposed to asbestos during Simon Roebuck's employment with defendant and, specifically, Simon Roebuck was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1 960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Simon Roebuck died on March 1, 1999.
7. Simon Roebuck's income for the fifty-two (52) weeks prior to his retirement in 1985 was $41,047.45.
8. The Pre-Trial Agreement of the Parties, as well as the Additional Stipulations of the Parties that outlined Simon Roebuck's work and asbestos exposure history, are stipulated into evidence as Stipulated Exhibit 1.
9. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant in discovery are stipulated into evidence as Stipulated Exhibit 2.
10. The death certificate of Simon Roebuck is stipulated into evidence as Exhibit 3.
11. The income records of Simon Roebuck from the Social Security Administration are stipulated into evidence as Stipulated Exhibit 4.
12. Simon Roebuck's service and employment records from defendant have been stipulated into evidence as Stipulated Exhibit 5.
13. The relevant medical records of Simon Roebuck, including documentation from Drs. Dula, Chiles, Lucas, and Powers, are stipulated into evidence as Stipulated Exhibit 6.
14. Defendant stipulates that all procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program that is contained in N.C. Gen. Stat. §§97-60 through 97-61.7. Further, these procedures were in place during Simon Roebuck's employment at the Plymouth facility.
15. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in the State of North Carolina were the same.
16. Defendant stipulates that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript, which was stipulated into evidence, included the facilities in North Carolina.
17. Simon Roebuck's representative that contends that she is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
18. The parties agree that the contested issues before the Commission are as follows:
 a. Did Simon Roebuck suffer from a compensable asbestos-related occupational disease and/or diseases? If so, what disease and/or diseases?
 b. What benefits, monetary and/or medical, is Simon Roebuck and/or his estate entitled to receive, if any, at this time?
 c. Was the death of Simon Roebuck accelerated and/or aggravated by and/or significantly contributed to a compensable asbestos-related occupational disease and therefore compensable under N.C. Gen. Stat. § 97-38?
 d. Whether Simon Roebuck's executrix shall be entitled to attorney's fees for the unreasonable defense of this matter?
 e. Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to Simon Roebuck's claim for benefits, and regardless, are these statutes in violation of the constitutions of the United States and North Carolina?
 f. Was Simon Roebuck engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
 g. At the time of diagnosis, was Simon Roebuck subject to removal from an occupation that exposed Simon Roebuck to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Simon Roebuck was an employee of defendant at its Plymouth, North Carolina, facility from February 16, 1942, until Simon Roebuck's retirement on August 31, 1985.
2. In the areas where Simon Roebuck performed his regular job duties, there were many pipes that were covered with asbestos insulation. The insulation was frequently damaged and deteriorated due to the chemicals in the plant. During his shift, Simon Roebuck had to sweep up his work area under the insulated pipes, which created a lot of asbestos dust. Decedent was also exposed to asbestos floor tile, which covered the floor of the control room where he often worked. The asbestos floor tile was not re-covered with brick tile until the mid-1980's.
3. It was the opinion of Dr. Phillip Lucas that the interstitial fibrotic changes on Simon Roebuck's high-resolution CT scan dated September 15, 1997, were consistent with asbestosis. Further, Dr. Lucas opined, and the Full Commission finds as fact, that Simon Roebuck had a significant history to asbestos with sufficient latency to develop the disease of asbestosis. It was Dr. Lucas's overall opinion that Simon Roebuck suffered from asbestosis to a reasonable degree of medical certainty, based on radiographic findings, Simon Roebuck's history of exposure, and sufficient latency.
4. It was the opinion of Dr. Fred Dula, based upon his review of multiple chest x-rays, that Simon Roebuck had diffuse interstitial changes throughout both lungs consistent with asbestosis.
5. Dr. Caroline Chiles opined that her findings were consistent with the occupational disease of asbestosis, based upon her review of Simon Roebuck's chest x-ray dated August 3, 1998.
6. Dr. Barry Powers interpreted Simon Roebuck's chest x-ray dated July 19, 1997, and reported extensive interstitial lung disease, which is consistent with the findings of Dr. Dula on the same chest x-ray.
7. Simon Roebuck developed asbestosis, an occupational disease, as a result of his employment with defendant. Simon Roebuck's employment with defendant placed him at an increased risk of developing asbestosis as compared to members of the general public.
8. During the two year period prior to decedent's first heart attack, he began to develop noticeable breathing problems.
9. It was the opinion of Dr. Lucas, board-certified in internal medicine, and the Full Commission finds as fact, that Simon Roebuck's underlying asbestosis aggravated and accelerated his heart disease, which was the ultimate cause of his death.
10. Dr. Vincent Sorrell, a cardiologist, opined, and the Full Commission finds as fact, that Simon Roebuck's underlying asbestosis aggravated and accelerated his heart disease, which was the cause of Simon Roebuck's death. Dr. Sorrell testified, and the Full Commission finds as fact, that Simon Roebuck's pulmonary disease was a significant contributing factor to the overall heart problems from which Simon Roebuck was suffering. It was also the opinion of Dr. Sorrell, and the Full Commission finds as fact, that Simon Roebuck's asbestosis was a significant contributing factor to Simon Roebuck's death.
11. Simon Roebuck's asbestosis, a compensable occupational disease, aggravated and accelerated his heart disease, which was the ultimate cause of Simon Roebuck's death on March 1, 1999.
12. Simon Roebuck had one adult son, Timothy Roebuck, who was not dependant on his father for support. Therefore, Doris Roebuck, Simon Roebuck's widow and the executrix of his estate, is the person wholly dependent upon the earnings of the deceased Simon Roebuck and is solely entitled to his benefits under the Workers' Compensation Act.
13. Defendant has conceded that Simon Roebuck was injuriously exposed to asbestos as a result of his employment with defendant. On April 10, 2000, Dr. Lucas rendered an opinion, and the Full Commission finds as fact, that the September 15, 1997, CT scan revealed bilateral interstitial fibrotic changes consistent with asbestosis. The Commission takes judicial notice that in defendant's contentions, defendant justifies the denial of this claim because Dr. Chiles had opined that a July 15, 1997, CT scan revealed no definite evidence of asbestosis. However, Dr. Chiles expressly opined that the possibility of asbestosis could not be excluded and recommended a follow up CT scan that took place on September 15, 1997, as aforementioned. Defendant failed to produce any medical testimony that Simon Roebuck did not suffer from asbestosis in response to the opinion rendered by Dr. Lucas. Defendant did not raise any reasonable grounds to not accept the opinion of Dr. Lucas. The defense of this claim on the issue as to whether Simon Roebuck had sustained asbestosis as a result of his asbestos exposure during his employment with defendant was based upon unfounded litigiousness.
14. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's finding, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
15. Simon Roebuck's income for the fifty-two (52) weeks prior to his diagnosis in 1985 was $41,047.45, which is sufficient to produce the maximum weekly compensation rate for 1985, $280.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Prior to his retirement, Simon Roebuck contracted the occupational disease of asbestosis as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Simon Roebuck was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. It has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344, 553 S.E.2d 680
(2001). As such, there is no showing in the record that Simon Roebuck was diagnosed with asbestosis prior to his retirement from defendant's employ in 1985.
4. Simon Roebuck's asbestosis, a compensable occupational disease, accelerated and aggravated his heart disease, which was the ultimate cause of Simon Roebuck's death. Therefore, Simon Roebuck's executrix is entitled to weekly compensation at a weekly rate of $206.00 for Simon Roebuck's death for a period of 400 weeks from the date of his death on March 1, 1999. In addition, his executrix is entitled to $3,500.00 for burial expenses. N.C. Gen. Stat. § 97-38; Wyatt v. Sharp,239 N.C. 655, 80 S.E.2d 762 (1954); Self v.Starr-Davis Co., 13 N.C. App. 694, 187 S.E.2d 466
(1972).
5. Defendant stipulated that, should the Industrial Commission determine that Simon Roebuck contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. §97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525,548 S.E.2d 736 (2001), and in Clark v. ITT GrinnellIndustrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereafter provided, defendants shall pay to Simon Roebuck's executrix weekly compensation at a weekly rate of $280.00 for Simon Roebuck's death for a period of 400 weeks from the date of his death on March 1, 1999. Compensation due that has accrued shall be paid in a lump sum, subject to the attorney's fees hereinafter provided.
2. Additionally, defendant shall pay to Simon Roebuck's executrix $3,500.00 for burial expenses, which are not subject to attorneys' fees.
2. Defendant shall pay an additional sum of 5% of the compensation awarded in paragraph 1 above to Simon Roebuck's executrix, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, February 29, 2001, until paid in full. The interest shall be paid in full to Simon Roebuck's executrix and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
6. A reasonable attorney's fee of 25% of the compensation due Simon Roebuck's executrix as was awarded in paragraph 1 above is approved for her counsel. Defendant shall deduct 25% of the lump sum otherwise due Simon Roebuck's executrix and shall pay such 25% directly to her counsel.
8. Defendant shall pay the costs of this proceeding.
This 24th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ DIANNE C. SELLERS COMMISSIONER